Mr. Hillis. May it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Kenneth Sandidge. He has raised three issues on appeal. First, the district court used unreliable evidence to assess a four-level enhancement, and when Mr. Sandidge challenged that enhancement, the district court refused to award him acceptance of responsibility. The government has the burden of proving the enhancement, and in this case it was the use of a firearm to commit another felony. But the government didn't meet its burden because it produced no reliable evidence establishing that Mr. Sandidge ever pointed a gun at Ms. Harris. It offered only her hearsay evidence via police officers who testified and they had their reports, but the statements by her weren't sworn and they weren't meaningfully corroborated in any fashion. We have the government's brief and it refers to the various things that were corroborated, but look to those and do those establish any proof that the statements made by the officers and the corroboration offered in the reports or through their testimony as to the color of the gun, at the location of the gun, etc., that the gun was in fact pointed at the individual, and they don't. The government should have brought in the witness if it wished to establish the four-level enhancement, or it should have had some certified statement by her such as was offered in other cases in the past where testimony has been given, copies of transcripts are used, establishing that the witness had the gun pointed at her, and there's direct testimony on those things or some sort of direct evidence, but none of that happened here. And Ms. Harris wasn't credible. So relying on her statements, which were not credible, didn't advance the ball at all. She gave inconsistent or false claims of rape. She gave inconsistent statements about where she met Mr. Sandidge. She was a crack and crack cocaine user and a drinker, so her ability to recall events may not have been especially good. And she couldn't even identify Mr. Sandidge as her assailant when she was face-to-face with him and the two officers who were accompanying her won at that point. That was immediately after the event. So her credibility is greatly in doubt. Well, there was a gun found on the couch, as she described it, and she was running down the street. All true. Which, again, goes to whether the pointing of the gun was meaningfully corroborated by any of those details. So true enough, those are facts of the case. But what fact do we have to show that the gun was pointed at the individual? And it would be through her testimony. Nobody else knows that in this case other than Mr. Sandidge and her. The government could have brought her in and chose not to. So the government chose not to bring in reliable evidence. And then the district court accepted that unreliable evidence, not only to impose a four-level enhancement, which is significant by itself, but also to take away three levels of acceptance of responsibility when somebody made a good-faith effort to challenge the unreliable evidence that was used to impose the four-level enhancement. We believe that all of that shows the district court acted improperly, both as to assessing the enhancement and to take away the acceptance of responsibility. Well, she's not inconsistent about the gun being pointed, though, right? She's inconsistent on some other matters. Yes. So what more were you going to have in a case where it's quite often only the alleged assailant and the victim that can discuss whether a gun was pointed? Just this. Bring her in. Have her testify. Because we never had that from her. And if her testimony could have been assailed by the defense attorney showing why she's lacking credibility in any of the district court's decision on that, we never heard from her. We should have. Well, but the other inconsistencies were before the district court, right? They were. And... So it just would be highlighted by cross-examination? It would be best as a practice to bring in the witness who's actually party to the event. And that didn't happen here. So she was never subject to cross-examination. She never submitted a sworn statement. Those are problems in this case. They're easily avoided. The government didn't want her there because they knew she wasn't credible. So they went this route. And that route is insufficient. My client also raises the matter of whether or not the district court erred in failing to address his request for concurrent time. We believe that surely the district court did in this case because the district court made very few statements about the request. It certainly didn't consider what the 1.3C and note 3A says the district court in making the consideration about whether concurrent time should be awarded shall consider 18 U.S.C. 3584B. And then 3584B in turn refers to the various factors that are relevant under 18 U.S.C. 3553A. Neither the guideline nor those statutes were ever discussed by the district court and there were no findings made on those matters. And that is an abuse of discretion that if the first issue doesn't require remand I believe surely the second one does. Unless the court has questions on either of those first two areas I'll move to the third which this court has heard a great deal about in past cases and so we are going to be repeating much but hopefully for good effect. The district court plainly erred in imposing conditions of supervised releases it did in this case because gave no reasons for the various conditions and of course we're under a plain error standard. The errors that we assert in this case the supervised release conditions impact my client's first amendment rights, his constitutional or excuse me his fundamental right. I'm interested in your argument that district courts have to give reasons for imposing conditions of supervised release when the defendant doesn't object to the pre-sentence report. Our earlier cases some of our recent earlier cases arise from conditions that were not flagged in the pre-sentence report and the district judge comes up with on his own. Well that makes it very hard for the defendant whether to object or to ask for anything but we've said in many cases that for example if the pre-sentence report proposes as a fact for example the defendant distributed a kilogram of cocaine and the defendant doesn't object the judge doesn't have to say anything that the judge can go forward with what's in the PSR and the same if the PSR says and here's the range defendant doesn't object judge doesn't have to explain the calculation of the range. Why isn't that equally true of conditions of supervised release? Recent authority by this court says that the judge's authority by this court deals with cases in which judges came up with conditions not flagged in the PSR. I'm trying to deal with what happens when the conditions are flagged in the PSR. Yes and if they raise constitutional concerns they survive an appeal waiver and Adkins said so and the district court has a responsibility as it was said in Siegel not simply to go with what is in the report or what is objected to or not objected to by attorneys but also to make an independent judgment about the appropriateness of the condition. You're not dealing with my question. We know that a district judge has to make findings of fact if the litigants ask but otherwise can just accept what's in the PSR. District judge has to make findings about the guideline range if the litigants ask but otherwise can accept what's in the PSR. The question I'm asking is why in your view conditions of supervised release are different? The statute says there shall be considerations. That's what 18s says there shall be findings of fact but that depends on a request. Under Siegel even if there is no request there's an obligation by the district court to impose proper conditions. Can you give me an answer to my question? I'm asking for a reason why district judges don't make findings of fact or findings about the guideline range if no one asks him to. They should. No we say they shouldn't. There's no need for it. Those are just established principles. I'm asking if there is some reason why supervised release should be treated differently. Yes because in the instance you gave it's a guideline calculation that is not a constitutional issue and so we have a different set of circumstances here where we have conditions of release that impact somebody's constitutional rights and liberties. In those circumstances like we would have any other constitutional problem. I hate to tell you this but a finding about the amount of cocaine somebody distributed seriously affects his liberty. It will raise his time in prison from a short time to a long time including life. I don't think you can say that one of these things affects liberty and the other doesn't. The point I'm making your honor is that when we are restricting somebody's travel as one of the conditions supervised. Look if a guy is sentenced to jail he can't travel outside his cell right. The findings if the super if the PSR says this guy distributed 50 kilograms of crack and there's no objection. His sentence is going to be life in prison and the judge isn't going to make any findings. So you can't use as a ground of difference the fact that one involves liberty and the other doesn't. They both involve liberty. Well I have a difficult time squaring your honor's question then with the decision in Adkins where the finding was I don't believe objected to. I have to go back and check Adkins but nevertheless the condition of supervised release was vacated because it was vague even if it was unobjected to and there was an appeal waiver in that case. So I believe the challenges do survive and the district court is required to make findings and I'm well past my rebuttal but thank the court for Good morning. I please the court Nicholas Padilla on behalf of the United States. The district court did not clearly err in relying on the victim's recorded statement that the defendant pointed a firearm at her in finding that the defendant possessed a firearm in connection with another felony offense. In this case the victim told two law enforcement officers the initial officer on the night in question as well as an ATF agent that the defendant pointed a firearm at her and threatened to kill her. The second interview with the ATF agent was audio recorded. Defendant denies ever pointing a firearm so the court was left at the sentencing hearing and what story to believe. Yes the victim did not testify however the court was able to hear from testimony from both law enforcement officers who testified concerning their communications with the victim as she described the defendant pointing a firearm at her and threatening to kill her. Additionally portions of the recorded interview with the ATF agent was also played. Both law enforcement reports were also omitted at the sentencing hearing describing communications of the victim with law enforcement officers again discussing how the firearm was pointed at her. Now the district court was able to assess the credibility of the both stories being the victim's story and the defendant's story that he did not point a firearm at her and at the conclusion of evidence the district court took a recess and he took that recess so he can go back and listen to the audio recorded interview of the victim. He also read both law enforcement reports and when he came back out he admitted he listened to the entire interview of the victim and he recognized right from the get-go that there were inconsistencies with both the victim's reports of events as well as the defendant's reports. However he found by the preponderance of the evidence that the victim's story was credible and the defendant's story was not credible and the district court in finding the victim's report credible indicated that her story was corroborated and was consistent and focused on factors of description of the firearm being a silver revolver. The silver revolver was located in the defendant's residence. It was located in the living room, the exact location of where the pointing of the firearm took place and he also took note of the victim's comments concerning as far as her actions of running down the street screaming for help at 3 a.m. in the morning as she's knocking on doors asking for occupants of the residence to call law enforcement for help. The district court also commented on the defendant's inconsistencies and finding that he was not credible. He focused on the aspect of when the night in question defendant gave three different stories to law enforcement officers. First story, victim was never at the house. Second story, victim was at the house cleaning the house at 3 a.m. in the morning. Third story, victim was at the house he tried hooking up with her sexually however she got sick and left. The court did not believe that aspect of it and he further did not believe the riding a bicycle at 3 a.m. in the morning. The victim had told law enforcement that the defendant was chasing her after she fled from the house. Defendant told law enforcement that he likes to take bike rides at 3 a.m. in the morning. The court did not believe that version. He basically indicated in that neighborhood. Yes, he was taking a bicycle ride at 3 a.m. in the morning. Fits more to the victim's story of events that he pointed a firearm at her and she fled. None of defendant's arguments establishes the district court clearly erred as a matter of law in accepting more likely than not the defendant pointed a firearm at the victim. Defense counsel brings up an aspect of the victim not being called. That's not required at a sentencing hearing. In addition, we have a that raped the victim, that threatened her that night to kill her, that threatened her subsequently in telephone phone calls after the incident to kill her, who has family members that are in law enforcement also that he indicated would assist him in taking care of the situation so that he would not be prosecuted in this case. Defense counsel had plenty of time to subpoena the victim and call her. Your time is short. I think you need to get to the other issues in this. Let's start with the question of the concurrent sentence. Did the district judge ever discuss that possibility? At the sentencing hearing, defense counsel requested a concurrent sentence on two occasions. On the second occasion, after defense counsel requested a concurrent sentence, the government requested or the court district court asked government's position. Government requested a consecutive sentence and with that consecutive sentence they requested that it was two separate crimes and immediately thereafter the district court proceeded into analysis of 3553 factors and it was extensive. Would you answer my question, which is did the district court discuss the possibility of a concurrent sentence? Your argument seems to be that the judge didn't discuss it but we should infer that he thought about it. Correct. But what I want to know is whether he discussed it. Did he mention it? Did he talk about it? No, he did not mention it. So the answer is no. Correct. It's always frustrating to judges when a simple yes or no question doesn't produce a yes or no answer. You can then explain why you think the no answer isn't dispositive but I don't get the filibuster. Understood. It's government's position that the court, at the timing of the arguments from both parties concerning what it should be as far as a sentence being concurrent or consecutive, he immediately went into the 3553A factors and he discussed those extensively with the defendant and when he went into those he came back and issued his sentence as far as a 92 month sentence being consecutive to a state undischarged state sentence. Now let's come to the conditions of supervised release. Let's put to one side for a moment the procedural question, whether the district judge had to discuss them in the absence of an objection. We have substantive objections to some of these including, it seems to me, conditions that other panels have already held are substantively invalid like the mood altering substances condition. I haven't a clue what the mood altering substance condition forbids unless maybe it forbids chocolate because that's certainly a mood altering substance. Right? I'm more than a little surprised that your brief doesn't say, okay, here are a bunch of conditions that substantively are invalid, let's set them aside and defend the others. You seem not to be willing to accept any of them as invalid. Correct. I mean government understands that. So how are we going to, what are we supposed to say about the decisions of other panels that have said, for example, that the mood altering substance condition is unconstitutionally vague? In fact, it's totally incoherent. Are we supposed to ignore it? I think at a later time this could be corrected. Here we have a defendant that's serving a 92 month sentence in his pending federal case. I'm not sure he's ever going to get to a position. We have a condition that is substantively invalid under established seventh circuit law and it's being appealed from. Why isn't the defendant entitled to have it set aside right now? I'm not sure if he's ever going to get to that position first, but it can always be set back for a limited remand as far as just to correct that aspect, so it could be contrary to existing law. That was the case at the time of sentencing. There were cases in our circuit that said that the mood altering thing was vague. At the time that he was sentenced? I'm not sure. Well, I mean if it was, it should have been raised, right? Yes. It certainly has been discussed since. Yes, it has. Are there any other questions concerning concurrent or supervised release conditions? No other questions? The government is asking that this court affirm the district court's sentence. Thank you. Thank you. Two minutes. It's good to see you again, counsel Holmes. Good to see you, Judge. How many arguments have you now made, Mr. Hillis, in the last 30 days on supervised release? More than today's and I'll try to keep the rest of this brief. This court's aware of our concerns and of course one of the things we've tried to highlight is that defendants don't seem to be aware of what the conditions are and they are at risk of raising things and aggravating a judge and this judge was pretty already at the prospect of giving my client anything other than a fairly long sentence. He wasn't going to consider conditions of supervised release in a grateful way so that's why it's important to raise them now and we are trying to do so not just for the client today but also for the one in the future so these conditions don't continue to be imposed in the way that they are but beyond that we have the problem still about all the things the government said. It didn't have any evidence of this gun being pointed other than this audio recording I suppose which they played in chambers and my client wasn't present and that's a bit of a problem in and of itself but we have by the government's statements here two unreliable people. That doesn't mean the gun was pointed at the victim in that case. We simply have the same problem that we did when I stood up here. We have a credibility issue involving the assessment of the four-level enhancement as it because my client may be not so credible and then lastly there was no discussion of the concurrent versus consecutive sentence. There were no findings at least with respect to the statutes and the relevant guideline provisions and of course under Gaul you have to start with the correct calculation of the guidelines and Gaul says to consider the 3553a factors and fashioning an appropriate sentence and that bears on the request for the concurrent time. That wasn't done here so for these various reasons we ask the court to remand. Thank you. Thank you Mr. Hills. Thank you Mr. Padilla. Please take it under advisement the court will proceed.